**NORTON ROSE FULBRIGHT US LLP**
Counsel for the Petitioners
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5100
Andrew Rosenblatt
Francisco Vazquez

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ----------------------------------------------------------- x | |
| In re | : |
| | : |
| MADISON ASSET LLC, | : In a Case Under Chapter 15 |
| | : of the Bankruptcy Code |
| | : |
| Debtor in a Foreign Proceeding. | : Case No. 18-___ |
| ----------------------------------------------------------- x | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION UNDER**</u>
<u>**CHAPTER 15 FOR RECOGNITION OF FOREIGN MAIN PROCEEDING**</u>

Martin Nicholas John Trott and Christopher James Smith, in their capacity as the

Joint Official Liquidators (the "<u>Petitioners</u>") of Madison Asset LLC (in Official Liquidation) (the

"<u>Company</u>") and as duly authorized foreign representatives as defined by section 101(24) of title

11 of the United States Code (the "<u>Bankruptcy Code</u>"), through their United States counsel,

Norton Rose Fulbright US LLP, respectfully submit this memorandum of law in support of the

Verified Petition under Chapter 15 for Recognition of Foreign Main Proceeding, filed

contemporaneously herewith (the "<u>Verified Petition</u>").   In support thereof, the Petitioners

respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The Petitioners, as foreign representatives of the Company, commenced this

Chapter 15 case by filing a Chapter 15 Petition a contemporaneously with, and accompanied by,

all certifications, statements, lists and documents required under Chapter 15 and the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  As set forth in (i) the Verified

Petition, and (ii) the Declaration of Marc Kish, Cayman Islands legal counsel to the Petitioners,

dated September 14, 2018 (the "Kish Declaration"):

<ol type="a">
<li>a foreign proceeding respecting the Company was duly commenced in the Cayman Islands;</li>

<li>the Company's registered office is R&H Trust Co., Ltd., PO Box 897, Windward 1, Regatta Office Park, Grand Cayman, KY1-1103, Cayman Islands;</li>

<li>the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code;</li>

<li>the Petitioners are duly authorized to serve as foreign representatives and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the proceeding respecting the Company pending in the Cayman Islands; and</li>

<li>the Petitioners are entitled to the relief requested.</li>
</ol>

2.      The Petitioners seek recognition of the Company's liquidation proceeding (the

"Cayman Proceeding"), commenced by the filing of a winding up petition in accordance with

Part V of the Cayman Islands Companies Law (the "Companies Law") with the Grand Court of

the Cayman Islands (the "Cayman Court").     On July 4, 2018, pursuant to an order of the

Cayman Court (the "Winding Up Order"), a copy of which is annexed to the Verified Petition as

Exhibit "A," Mr. Trott was appointed as the Official Liquidator of the Company.  Thereafter, by

order dated August 17, 2018 (the "August 17 Order"), a copy of which is annexed to the Verified

Petition as Exhibit "B," Mr. Smith was appointed as the Joint Official Liquidator of the

Company.   As the Joint Official Liquidators of the Company, the Petitioners are responsible for,

inter alia, (i) investigating the event leading to the Company's failure, (ii) taking possession of

and collecting the Company's assets, and (iii) realizing and distributing the Company's assets to

its creditors.  The Petitioners, by virtue of their appointment by the Cayman Court, are subject to

the supervision and oversight of the Cayman Court with respect to the performance of their duties.

3.       Pursuant to an order dated September 5, 2018 (the "September 5 Order"), a copy of which is annexed to the Verified Petition as Exhibit "C," the Cayman Court expressly authorized the Petitioners to seek recognition of the Cayman Proceeding under Chapter 15 of the Bankruptcy Code.   Hence, the Petitioners have commenced this Chapter 15 case and seek an order substantially in the form of the proposed Order Granting Recognition of a Foreign Main Proceeding attached to the Verified Petition as Exhibit "D" (the "Proposed Order").    In particular, the Petitioners are requesting all relief afforded automatically upon recognition to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code.

4.       The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.   In addition, the Company is eligible to be a debtor under section 109(a) of the Bankruptcy Code, because it has property in the United States, in the form of an undrawn retainer in a bank account held by the Petitioners' U.S. counsel.[1]

5.       Based on the foregoing and the reasons described herein and in the Verified Petition, the Petitioners are entitled to an order granting recognition to the Cayman Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

## FACTS

6.       The Court is respectfully referred to the Verified Petition,[2] which contains the relevant facts, all of which are incorporated herein by reference.

---

[1]     In addition to the undrawn retainer, the Company may have cash and securities held in banks in the United States.  The Petitioners have been informed that certain accounts in the Company's name were recently closed, and the Petitioners intend to seek discovery in order to ascertain if other accounts exist and remain open.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

8.      Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

## ARGUMENT

## I.      The Company is Eligible to be a Debtor under Section 109 of the Bankruptcy Code

9.      In this Circuit, an entity must be eligible to be a debtor under section 109(a) of the Bankruptcy Code before its foreign proceeding can be granted recognition under Chapter 15. See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 247 (2d Cir. 2013) ("Section 109 . . . applies 'in a case under chapter 15.'").  Section 109(a) states, in relevant part, that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title."  11 U.S.C. § 109(a).  See In re Octaviar Administration Pty Ltd., 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014)("[T]he Court must abide by the plain meaning of the words in the statute.  Section 109(a) says, simply, that the debtor must have property; it says nothing about the amount of such property….");  see also In re Suntech Power Holding Co. Ltd., 520 B.R. 399 (Bankr. S.D.N.Y. 2014)(same).

10.     "Where a foreign debtor does not have a place of business in the United States, the question often arises whether the foreign debtor has 'property in the United States' as a condition precedent to eligibility under section 1517."  In re Ocean Rig UDW Inc., 570 B.R. 687, 699 (Bankr. S.D.N.Y. 2017), appeal dismissed, 585 B.R. 31 (S.D.N.Y. 2018).  Here, the Company has property in the United States consisting of an undrawn retainer in a bank account

in this District. [3]  See Verified Petition ¶26.  See, e.g., In re Ocean Rig, 570 B.R. at 700 (noting that funds held in a retainer account satisfy section 109(a)); In re Cell C Proprietary Ltd., 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017) (same);  In re Octaviar Administration Pty Ltd., 511 B.R. at 373-74 (same); In re Suntech Power Holdings Co., Ltd., 520 B.R. 399, 411-12 (Bankr. S.D.N.Y. 2014) (holding that bank account in United States satisfies debtor eligibility requirement).

## II.    This Case is Proper under Chapter 15

11.    Chapter 15 of the Bankruptcy Code provides a mechanism for a foreign representative to obtain, in the United States, recognition of, and assistance for, a foreign proceeding.  See 11 U.S.C. § 1501(b)(l).  Chapter 15 recognition shall be granted if: (a) recognition is sought for a "foreign proceeding" that qualifies as either "foreign main" or "foreign nonmain"; (b) recognition is sought by a "foreign representative"; and (c) the Chapter 15 petition meets certain procedural requirements.  See 11 U.S.C. § 1517(a).  The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. REP. 109-31, pt. 1 (2005).  Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements.

---

[3]    In addition to the undrawn retainer, the Company may have cash and securities held in banks in the United States.  The Petitioners have been informed that certain accounts in the Company's name were recently closed, and the Petitioners intend to seek discovery in order to ascertain if other accounts exist and remain open.

A.    The Cayman Proceeding is a Foreign Proceeding

12.    A winding up under the Companies Law Act is a foreign proceeding entitled to recognition under Chapter 15 of the Bankruptcy Code.[4] See In re Ocean Rig, 570 B.R. at 701. A foreign proceeding has seven elements:

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

In re Ashapura Minechem Ltd., 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012) (quoting In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009)) (alteration in original); see also In re ABC Learning Centres Ltd., 445 B.R. 318, 327 (Bankr. D. Del. 2010), aff'd, 728 F.3d 301 (3d Cir. 2013) (citation omitted) (identifying the same seven elements); see 11 U.S.C. § 101(23).

i.    *The Cayman Proceeding is a "Proceeding"*

13.    For the purpose of Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." Betcorp, 400 B.R. at 278. Here, the relevant statutory framework is provided by the Companies Law. As described in the Kish Declaration, the Companies Law governs the liquidation and winding up of the Company. See Kish Declaration ¶ 15; see also In re Ocean Rig, 570 B.R. at 701 (noting that the Companies Law "is applicable to corporate

---

[4]    The conclusion that the Cayman Proceedings are foreign proceedings within the meaning of section 101(23) is further supported by precedent. On multiple occasions, this Court has previously held that insolvency proceedings under Cayman Islands law qualify as foreign proceedings under chapter 15 of the Bankruptcy Code. See, e.g., In re Suntech Power Holdings Co., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (provisional liquidation); In re Platinum Partners Value Arbitrage Fund et al., No. 16-12925 (SCC) [ECF No. 27] (Bankr. S.D.N.Y. Nov. 23, 2016) (official liquidation); In re Ardent Harmony Fund, Inc., No. 16-12282 (MG) [ECF No. 17] (Bankr. S.D.N.Y. Sept. 1, 2016) (official liquidation); In re Caledonian Bank Ltd., No. 15-10324 (MG) [ECF No. 39] (Bankr. S.D.N.Y. Mar. 17, 2015) (official liquidation). This Court has previously noted that there does not appear to be "any case in which a U.S. bankruptcy court found that a Cayman liquidation or scheme proceeding did not satisfy the requirements of section 101(23)." See In re Ocean Rig, 570 B.R. at 702.

insolvencies"). Because the Cayman Proceeding is operating under the framework of the Companies Law, it is a "proceeding" within the meaning of 11 U.S.C. §101(23).

> ii.    *The Cayman Proceeding is Both*
> *Judicial and Administrative in Character*

14.    Second, the Cayman Proceeding is judicial and administrative in character. See ABC Learning Centres, 445 B.R. at 328 ("The Court finds that the Liquidation Proceedings are primarily administrative in character, and at times judicial in character."). Actions taken by the Petitioner, "such as sending a notice of liquidation and requesting proofs of debt, have an administrative character." Betcorp 400 B.R. at 280. In addition, the Cayman Proceeding is judicial in character given the substantial judicial oversight over the Cayman Proceeding and the Petitioners that can be invoked by interested persons, including a creditor. See Kish Declaration ¶¶ 17, 20, and 21. Indeed, the judicial character of the Cayman Proceeding has already become evident as the Petitioners were appointed to be the Joint Official Liquidators of the Company by the Cayman Court. See Verified Petition, Exhibits A, B; see Kish Declaration ¶22. Moreover the Cayman Court expressly authorized the Petitioners to file this Chapter 15 case. See Verified Petition, Exhibit C; see Kish Declaration ¶22. Thus, the Cayman Proceeding is administrative and judicial in character.

> iii.    *The Cayman Proceeding is Collective in Nature*

15.    Third, the Cayman Proceeding is collective in nature. "A proceeding is collective in nature if it 'considers the rights and obligations of all creditors.'" In re Ashapura Minechem Ltd., No. 11–14668, 2011 WL 5855475, at *3 (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting Betcorp, 400 B.R. at 281). "The 'collective proceeding' requirement is intended to limit access to Chapter 15 to proceedings which benefit creditors generally and to exclude proceedings which are for the benefit of a single creditor." 8 COLLIER ON BANKRUPTCY ¶ 1501.03[1], 1501-7 (16th

ed. Rev. 2009).    A winding up under the Companies Law is collective because it benefits creditors generally.    Under the Companies Law, a company's assets are distributed ratably to all creditors.    See Kish Declaration ¶¶ 14, 21.    Indeed, this Court previously held that liquidations under the Companies Law are "collective judicial proceedings."    See In re Ocean Rig, 570 B.R. at 701.

iv.    <em>The Cayman Proceeding is Pending in a Foreign County</em>

16.    Fourth, the Cayman Proceeding is pending in a foreign country.    The Cayman Court, which ordered that the Company be wound-up and appointed the Petitioners as the Official Liquidators of the Company, is located in the Cayman Islands, a British Overseas Territory.    Likewise, the Petitioners themselves are located in the Cayman Islands and are managing the winding up of the Company from the Cayman Islands under the auspices of the Companies Law.    Therefore, there should be no dispute that the Cayman Proceedings are pending in the Cayman Islands, a foreign country.

v.    <em>The Cayman Proceeding is Occurring under<br>a Law Relating to Insolvency or Adjustment of Debt</em>

17.    Fifth, the Cayman Proceeding was initiated under a law relating to insolvency or adjustment of debt.    The Cayman Proceeding was commenced under the Companies Law, which provides for three different modes of winding up Cayman Islands companies: (1) compulsory winding up by order of the Cayman Court, (2) voluntary winding up initiated by a resolution of the shareholders, and (3) voluntary winding up initiated by a resolution of the shareholders, but subject to the supervision of the Cayman Court.    See Kish Declaration ¶ 16.    Consequently, the Companies Law constitutes a law relating to insolvency or the adjustment of debt.    See In re Ocean Rig, 570 B.R. at 701 (noting that the Companies Law "is a 'law relating to insolvency or adjustment of debt'").

> vi. *The Cayman Proceeding Subjects the Company's Assets
> and Affairs to a Foreign Court's Control or Supervision*

18.     Sixth, the Cayman Proceeding subjects the Company's assets and affairs to a foreign court's control or supervision.  See In re Ocean Rig, 570 B.R. at 701 ("A Cayman debtor's assets and affairs are subject to the control or supervision of the Cayman Court in both provisional liquidation proceedings and proceedings seeking sanctioning of schemes of arrangement.").  In the Cayman Proceeding, various parties, including creditors, have access to the Cayman Court and may seek relief from the Court, including  a stay of the liquidation and leave from the Court to pursue claims against the Company. See Kish Declaration ¶¶ 19, 20.

> vii. *The Cayman Proceeding is for the Purpose of Liquidation*

19.     Finally, the Cayman Proceeding is for the purpose of liquidation.  Under Section 110 of the Companies Law, a liquidator's duty is, among other things, to collect, realize and distribute the assets of the company to its creditors and if there is a surplus, to equity holders.  See Kish Declaration ¶23. "The aim of a winding up is to ensure an orderly and ratable distribution of the property (if any) of a company to the company's stakeholders."  Kish Declaration ¶ 14.  As such, the ultimate purpose of the Cayman Proceeding is to liquidate the Company and distribute its assets to its creditors.

B.     This Case Was Commenced by the Company's Foreign Representatives

20.     This Chapter 15 case was commenced by duly appointed and authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.  That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

21.    Given that a foreign proceeding must be for the purpose of "reorganization or liquidation," it is axiomatic that persons appointed specifically to liquidate a company are regularly recognized as foreign representatives.[5]  As demonstrated by the evidence submitted on behalf of the Petitioners, including the Kish Declaration and the September 5 Order, the Petitioners are duly authorized to act as the Company's and the Cayman Proceeding's foreign representatives in these Chapter 15 cases.  In particular, the September 5 Order specifically states that the Petitioners "are permitted to file a petition for recognition of the official liquidation and requests for orders granting additional relief under Chapter 15 of the United States Bankruptcy Code in the United States." See Verified Petition Ex. C.

22.    Based on the evidence submitted on behalf of the Petitioners, including the Kish Declaration and the Verified Petition and the exhibits thereto, the Petitioners are duly authorized to jointly act as the Company's foreign representatives, as defined under section 101(24), in this Chapter 15 case.

C.    This Chapter 15 Case was Properly Commenced

23.    This Chapter 15 case was duly and properly commenced, as required by sections 1504 and 1509 of the Bankruptcy Code, by the filing of the Petition, accompanied by all documents and information required by sections 1515(b) and (c).  See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515

---

[5]    See, e.g., In re SPhinX, Ltd., 351 B.R. 103 (Bankr. S.D.N.Y. 2006), aff'd, Krys v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re SPhinX, Ltd.), 371 B.R. 10 (S.D.N.Y. 2007) (recognizing joint liquidators in a winding-up under Cayman Island law as foreign representatives); In re Britannia Bulk PLC, No. 08-14543 (Bankr. S.D.N.Y. December 12, 2008) (recognizing liquidators who were appointed pursuant to the laws of England and Wales, and who were originally appointed as administrators, as foreign representatives).

of the Bankruptcy Code."). The Petitioners properly commenced this Chapter 15 case because the Petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code.

**III.**    **The Cayman Proceeding Should be Recognized as a Foreign Main Proceeding**

24.    This Court should recognize the Cayman Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code. A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests ("COMI"). See 11 U.S.C. § 1517(b)(l). The Company's COMI is located in the Cayman Islands, where the Cayman Proceeding is pending. Accordingly, the Cayman Proceeding should be recognized as a foreign main proceeding.

25.    A company's COMI is presumed to be wherever its registered office is located. See 11 U.S.C. § 1516(c); see also In re Millennium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 76 (Bankr. S.D.N.Y. 2011) (finding that the Bankruptcy Code "establishes a rebuttable presumption that the COMI is at the debtor's registered office"), aff'd, 474 B.R. 88 (S.D.N.Y. 2012). Here the Company's registered office is located in the Cayman Islands. See Verified Petition ¶ 1(b). Accordingly, the Cayman Islands is presumed to be the Company's COMI. While that presumption is rebuttable, see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 130 (Bankr. S.D.N.Y 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008), there is no reason for the Court to reject that presumption in this case.

26.    As the United States Court of Appeals for the Second Circuit has held, "a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests." Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 137 (2d Cir. 2013). A "court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." Id. at 138, n.10; see also Bear Stearns, 374 B.R. at 130 (noting

that debtors' center of main interests is where the debtors "conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties."). Moreover, "COMI can be premised on liquidation activities," including collecting assets and paying creditors. Millennium Global, 458 B.R. at 86 (citing Fairfield Sentry, 440 B.R. at 64 and British Am. Ins. Co., 425 B.R. at 884).

27.     As of the filing of the Petition, the Company's COMI is in the Cayman Islands because that is the location of the Company's "nerve center" and is the jurisdiction where the Petitioners are conducting the liquidation of the Company. As described in greater detail in the Verified Petition, the Petitioners, who are located in the Cayman Islands, under supervision and oversight by the Cayman Court, which is also located in the Cayman Islands, are managing the Company's liquidation activities from the Cayman Islands. In accordance with their fiduciary duties, the Petitioners have taken the necessary steps to centralize the administration of the Company's winding up and the Cayman Proceeding in the Cayman Islands. In particular, the Petitioners have: (i) recovered the Company's statutory books from the Company's former registered office provider, and are maintaining such books in the Cayman Islands; (ii) given actual notice of their appointment and the first meeting of creditors to known creditors and published such notice in the Cayman Islands Gazette, which is the official newspaper of the Cayman Island's government, and posted notice on the Company's website; and (iii) convened a meeting of creditors in the Cayman Islands and have had creditors submit proofs of debt in the Cayman Islands. The Petitioners have also taken steps to protect and realize the Company's assets. Among other things, the Petitioners have recovered cash and securities totalling approximately $46 million from one of the Company's brokers in the United Kingdom and have transferred those funds to accounts maintained in the Cayman Islands. Moreover, the Petitioners

will oversee and manage distributions to creditors and any litigation involving the Company

from the Cayman Islands.  Accordingly, the Company's COMI is in the Cayman Islands because

that is the jurisdiction of the liquidation activities related to the Company.

28.    Based on all of these factors, the Cayman Islands is the only jurisdiction that is

readily ascertainable by third parties as the Company's COMI.  See Bear Stearns, 374 B.R. at

130 (noting that debtors' center of main interests is where the debtors "conduct the

administration of their interests on a regular basis and is therefore ascertainable by third

parties.").  Because the evidence establishes that the Company's COMI is located in the Cayman

Islands, the Cayman Proceeding should be recognized as a foreign main proceeding.

## IV.    The Requested Relief Should be Granted

29.    All of the relief sought by the Verified Petition, including (a) staying actions

concerning or against any of Debtors' assets, (b) suspending the right to transfer, encumber or

otherwise dispose of any of the Debtors' assets, and (c) entrusting the administration or

realization of all of the Debtors' assets within the territorial jurisdiction of the United States to

the Petitioners, is available and should be granted.  As set forth below certain of the requested

relief is automatically available under section 1520 of the Bankruptcy Code, which provides for

automatic relief upon recognition of a foreign main proceeding.  See 11 U.S.C. § 1520.[6]  Other

---

[6]    If this Court were to conclude that any of the requested relief is not available as a matter of right under section
1520 or at this Court's discretion under section 1521, relief may be granted pursuant to section 1507 of the
Bankruptcy Code.    Section 1507 authorizes this Court to "provide additional assistance to a foreign
representative under [the Bankruptcy Code] or under other laws of the United States."  11 U.S.C. § 1507.  In
deciding whether to extend relief under section 1507, this Court must consider principles of comity and
determine whether the requested relief would reasonably assure: (a) just treatment of the Companies' creditors
and equity holders; (b) protection of the Companies' United States creditors against prejudice and
inconvenience in claim processing; (c) prevention of preferential or fraudulent dispositions of the Companies
'property; and (d) distribution of the Companies' property substantially in accordance with the Bankruptcy
Code's priority scheme.  See id.  "These provisions embody the protections that were previously contained in
section 304 of the Bankruptcy Code . . . ."  In re Rede Energia S.A., 515 B.R. 69, 95 (Bankr. S.D.N.Y. 2014).
Given the long history of  Cayman Islands liquidations being recognized in the United States, there can be no
doubt that these criteria are satisfied.

portions of the requested relief are available under section 1521 of the Bankruptcy Code, which provides this Court with discretion to grant additional relief upon recognition of a foreign proceeding.  See 11 U.S.C. § 1521.

A.    The Petitioners are Entitled to Relief under Section 1520

30.    Upon recognition of a foreign main proceeding, certain relief is automatically granted as a matter of right.  See In re Rede Energia S.A., 515 B.R. at 89 ("If a foreign case is recognized as a foreign main proceeding, as it was here, certain relief automatically goes into effect, pursuant to 11 U.S.C. § 1520 . . . ."); 11 U.S.C. § 1520.  This relief includes, among other things, imposition of an automatic stay with respect to the foreign debtor and all of its property in the United States.  See 11 U.S.C. § 1520(a)(l) ("Upon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States.").

31.    An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met.  See 11 U.S.C. § 1517.  As set forth above: (i) the Company is eligible to be a Chapter 15 debtor pursuant to section 109(a) of the Bankruptcy Code; (ii) the Cayman Proceeding is a foreign proceeding; (iii) the Petitioners are the Company's foreign representatives; and (iv) the Petition satisfies the requirements of section 1515 of the Bankruptcy Code.    Therefore, this Court should enter an order recognizing the Cayman Proceeding as a foreign main proceeding, and grant all relief that is automatically available upon recognition of a foreign main proceeding, including imposition of the automatic stay with respect to all of the Company's property in the United States.

B.    The Petitioners are Entitled to the Relief Requested under Section 1521

32.    In addition to the relief that is automatically provided by section 1520, the Petitioners seek a variety of relief under section 1521 of the Bankruptcy Code to assist in the

effective administration of the Cayman Proceeding.  Upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may, at the request of the foreign representative

> where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of creditors . . . grant any appropriate relief including -
>
> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
>
> (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
>
> (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
>
> *        *        *
>
> (7) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative.

11 U.S.C. § 1521(a).  Section 1521 authorizes this Court to grant injunctive relief, provided that the foreign representative demonstrates that the traditional standards for issuance of an injunction have been met.  See 11 U.S.C. § 1521(e).  Those standards require that a court consider whether: (i) the plaintiffs are likely to succeed on the merits of their claims; (ii) there is no adequate remedy at law; and (iii) the balance of equities favors granting such relief.  Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), aff'd, 41 F.3d 1570 (2d Cir. 1994); New York State Nat'l Org. for Women v. Terry, 704 F. Supp. 1247, 1262 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. denied, 495 U.S. 947 (1990).

33.    Here, the Petitioners have requested a variety of relief, including injunctive relief, that is designed to assist in the liquidation of the Company and "prevent[ing] individual American creditors from arrogating to themselves property belonging to the creditors as a group."  In re Banco Nacional de Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 664 (Bankr.

S.D.N.Y. 1988).  Because the Petitioners satisfy all of the requirements for injunctive relief, this relief should be granted.

        i.     *Petitioners Have Demonstrated a Likelihood of Success on the Merits*

34.     As described herein, the Petitioners have demonstrated a likelihood of success as to the merits of the Verified Petition.  First, the Company has property in the United States and is therefore entitled to be a debtor under the Bankruptcy Code.  Second, this case is proper under Chapter 15 of the Bankruptcy Code.  Third, the Cayman Proceeding is pending in the Cayman Islands, where the Company has its COMI, and is therefore entitled to recognition as a foreign main proceeding.  Finally, and as set forth below, neither recognition nor any of the other relief sought herein would be manifestly contrary to the public policy of the United States.  Accordingly, the Petitioners are likely to succeed in any dispute regarding the merits of the Verified Petition.

        ii.     *No Adequate Remedy at Law*

35.     Irreparable harm is one basis for establishing the inadequacy of any legal remedy. Travellers, 722 F. Supp. at 1096.  Courts consistently hold that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury."  In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988).  Moreover, disruption of the orderly determination of claims and the fair distribution of assets of an estate constitutes irreparable harm.  See Victrix S.S. Co. S.A. v. Salem Dry Cargo A.B., 825 F.2d 709, 713-14 (2d Cir. 1987).  Finally, irreparable harm has been found where allowing litigation to go forward would: (i) threaten the assets of a foreign estate; (ii) subject a foreign representative to a default judgment; or (iii) divert funds needed for the purpose of maximizing value for the estate's creditors.  See In re Gercke, 122 B.R. 621, 626 (Bankr. D.C. 1991).

36.     Absent the relief requested, the Petitioners may be forced to choose between a number of unappealing alternatives, any one of which would constitute irreparable harm.  If entities in the United States are not enjoined, any assets of the Company's estate may be prematurely pieced out and the orderly determination of claims and the fair distribution of assets in the foreign proceeding will be severely disrupted.  To prevent such a premature piecing-out, the Petitioners may be forced to expend finite resources of the Company in defense of attachment and other similar actions.  As noted above, such an expenditure of limited estate resources in defense of creditor attachment efforts would itself constitute irreparable harm to the Company and its creditors.  See In re Gercke, 122 B.R. at 626.  Alternatively, the Petitioners could forego their defenses altogether, resulting in irreparable harm in the form of default judgments and affording unfair advantage to some creditors to the detriment of others.  Id.; In re Lines, 81 B.R. at 270.  Thus, unless the relief requested is granted, the Company and its creditors will suffer irreparable harm.

iii.     *The Balance of Equities Tips Decidedly in Favor of the Petitioners*

37.     The relief requested under section 1521 will cause little or no hardship to United States creditors.  Rather, all of the Company's creditors will benefit from such relief, including injunctive relief, which will further the Petitioners' efforts to collect, recover, and distribute the Company's assets to creditors in the Cayman Proceeding under the Companies Law.

38.     The Petitioners are seeking relief under section 1521 to ensure that they can comply with their duties under the Companies Law and administer the Company's assets for the benefit of the Company's estate and its creditors. Such relief will assist the Petitioners in meeting their obligation to collect the Company's property and distribute the proceeds thereof to creditors. Absent the relief requested, the Petitioners will not be able to administer the Debtors' assets in the United States to the detriment of creditors.  Moreover, the centralization of the

winding up of the Company in the Cayman Proceeding will benefit all creditors and interested parties by "prevent[ing] conflicting judgments from different courts and . . . harmoniz[ing] all of the creditors' interests with one another." Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir. 1976), cert. denied, 429 U.S. 1093, and reh'g denied, 430 U.S. 976 (1977). As this court has previously observed, "the foreign court which presides over the original proceeding is in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution." In re Bird, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) (citation omitted); see also Armco Inc. v. North Atlantic Ins. Co. (In re Bird), 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999) (counterclaims asserted against debtor in adversary proceeding prohibited by preliminary injunction and should be determined in the foreign proceeding).

39.     In contrast, without the requested relief, there can be no equitable and orderly distribution of the Company's assets pursuant to a unified, comprehensive statutory framework provided by the Companies Law in the Cayman Islands. Without the requested relief, it will be impossible for the Petitioners to maximize the value of the Company's assets in the United States for the benefit of creditors. Such an outcome would be contrary to the fundamental purpose of the Bankruptcy Code. See Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B., 773 F.2d 452, 459 (2d Cir. 1985) (the "guiding premise of the Bankruptcy Code . . . is the equality of distribution of assets among creditors."). Accordingly, the balance of the equities tips decidedly in favor of the Petitioners and the requested relief is appropriate under section 1521 of the Bankruptcy Code.

**V.    Recognition of the Cayman Proceeding Would Not be**
**Manifestly Contrary to the Public Policy of the United States**

40.    Section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires this Court to take any action that would be manifestly contrary to the public policy of the United States.   11 U.S.C. § 1506.   "[F]ederal courts in the United States have uniformly adopted the narrow application of the public policy exception."   In re OAS S.A., 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (citing Fairfield Sentry, 714 F.3d at 139).   The relief requested by the Petitioners is not manifestly contrary to, but rather consistent with, United States public policy.

41.    One of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.   See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .'").   Indeed, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."   Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate the laws or public policy of New York or the United States).   The Cayman Proceeding, like a case under chapter 7 of the Bankruptcy Code, provides a centralized process to (i) assert and resolve claims against an estate and (ii) make distributions to creditors. Recognizing the Cayman Proceeding and granting the requested relief under section 1521 of the Bankruptcy Code would assist in the centralization of disputes in a single jurisdiction.   That result is demonstrably consistent with the public policy of the United States.   See id. at 1259.

42.    Further, recognition of the Cayman Proceeding would be consistent with the purpose of Chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency.  Section 1501 of the Bankruptcy Code provides, in pertinent part that:

The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -

 (1) cooperation between -

    * * *

  (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

    * * *

 (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

 (4) protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

 43. Granting recognition to the Cayman Proceeding and granting the Petitioners the relief requested is consistent with, and critical to effectuate, the objectives of Chapter 15 for multiple reasons.  First, recognition of the Cayman Proceeding would foster cooperation between the Cayman Court and United States courts because it would enable the Petitioners to identify and effectively administer additional assets of the Company located in the United States in accordance with the Companies Law under the supervision of the Cayman Court.

 44. Second, recognition of the Cayman Proceeding and related relief would enhance the Petitioners' ability to comply with their duty to collect and maximize the value of the Company's assets for the benefit of the Company's creditors.  As described in greater detail in the Verified Petition, the Petitioners currently possess incomplete information regarding the Company's finances, but are aware that the Company, until recently had, and may still have, assets in the United States in the form of cash and securities held in bank accounts maintained by certain U.S. banks.  Chapter 15 relief will allow the Petitioners to seek discovery that may be essential in determining whether the Company currently has assets in the United States and

whether it would be appropriate or necessary to commence actions in the United States to recover them.[7]  Moreover, Chapter 15 relief would provide the Petitioners with the requisite authority to assert control over the Company's assets in the United States in accordance with their duties and obligations under the Companies Law.

45.    Finally, recognition of the Cayman Proceeding would promote the fair and efficient administration of a cross-border insolvency that protects the interests of all creditors and interested entities. By recognizing the Cayman Proceeding and granting the relief requested, this Court would help ensure that the administration of the Company's assets located in the United States and the process of resolving claims against the Company would be centralized in the Cayman Islands. If entities are not stayed from disposing or transferring the Company's assets in the United States without the Petitioners' consent, the Petitioners will not be able to properly administer the Company's assets for the benefit of all creditors. Moreover, if actions against the Company are not stayed, the orderly liquidation of the Company may be jeopardized and the Petitioners may be forced to expend resources unnecessarily (i) to defend actions against the Company in the United States, or (ii) to bring actions to enjoin the transfer of the Company's assets or to preserve the proceeds of such transfers for the benefit of all creditors and parties in interest.

46.    Accordingly, the relief requested would further the objectives of Chapter 15 by assisting the implementation of the Cayman Proceeding.

---

[7]    If and when the Petitioners determine that such recovery actions or other claims or causes of action should be pursued in the United States for the benefit of the Company's creditors, recognition of the Cayman Proceeding may be necessary to allow the Petitioners access to United States courts pursuant to section 1509(b) of the Bankruptcy Code.

## **CONCLUSION**

For the foregoing reasons, the Petitioners respectfully request that this Court grant the

relief requested in the Verified Petition.

Dated: New York, New York
September 18, 2018

                          NORTON ROSE FULBRIGHT US LLP


                          By: */s/ Andrew Rosenblatt*          _____
                                Andrew Rosenblatt
                                Francisco Vazquez
                                1301 Avenue of the Americas
                                New York, New York 10019
                                (212) 408-5100


                                *Counsel for the Petitioners*